UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY M. P.,

        Plaintiff,               Case No. 2:23-CV-11799
                                 District Judge Stephen J. Murphy, III
v.                            Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 12), DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 14), REMAND THE CASE TO THE COMMISSIONER AND ORDER EXPEDITING BRIEFING ON ANY OBJECTIONS

**I.     RECOMMENDATION AND ORDER**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary

judgment (ECF No. 12), **DENY** Defendant's motion for summary judgment (ECF

No. 14), and **REMAND** the case to the Commissioner for further proceedings

consistent with this report.

Given the narrow scope of the appeal of the Commissioner's decision, and

the relatively small number of issues in this report, I find good cause to

**EXPEDITE** the briefing of any objections.  Any objections will be due 10 days

from the date this report is entered, and responses to the objections will be due 10

days after that, as will be detailed below with dates certain.

## II.    REPORT

Plaintiff Kelly M. P., via counsel, brings this action under 42 U.S.C. §

405(g) for review of a final decision of the Commissioner of Social Security

(Commissioner) denying her application for disability insurance (DI) benefits

under Title II of the Social Security Act.  This matter is before the United States

Magistrate Judge for a Report and Recommendation on Plaintiff's motion for

summary judgment (ECF No. 12), the Commissioner's cross-motion for summary

judgment (ECF No. 14), and the administrative record (ECF No. 7).

### A.    Background and Administrative History

Plaintiff filed her claim for claim for Title II disability insurance benefits

("DIB") on June 3, 2021, alleging she was disabled as of January 1, 2021 as a

result of Huntington's disease, depression, anxiety, mood swings, and obesity.

(ECF No. 7-1, PageID.74, 199-202.)  Her initial claims were denied on September

17, 2021. (ECF No. 7-1, PageID.73-79.)  Plaintiff requested reconsideration, and

the request was denied on January 4, 2022.  (ECF No. 7-1, PageID.80-86.)

Plaintiff requested a hearing, which was held on June 9, 2022.  (ECF No. 7-1,

PageID.53-71.)  In a decision dated September 6, 2022, the Administrative Law

Judge (ALJ) David Kurtz found Plaintiff did not have a severe impairment or

2

combination of impairments and was, therefore, not disabled. (ECF No. 7-1, PageID.37-48.) Plaintiff requested review and, on June 1, 2023, the Appeals Council denied review, making the ALJ's decision the final action of the Commissioner. (ECF No. 7-1, PageID.23-28.)

Plaintiff filed this action on July 26, 2023, and the matter was referred to me for issuance of a report and recommendation on October 2, 2023.  (ECF No. 10.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 243 pages of medical records.  (ECF No. 7-1, PageID.267-510 [Exhibits 1F-9F]).  These materials were available to the ALJ at the time of her September 6, 2022 decision, and will be discussed in detail, as necessary, below.

### C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

3

this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the

4

merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651

(quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### D.    Analysis

The Social Security Administration has established a five-step sequential

evaluation process for determining whether an individual is disabled.  20 C.F.R. §

404.1520(a).  The Plaintiff bears the burden of proof at Steps 1-4, including

proving his residual functional capacity ("RFC").  *Walters v. Comm'r of Soc. Sec.*,

127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has

the burden of proof; this burden shifts to the Commissioner only at Step Five.")

(citing *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 148 (6th Cir.

1990)); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008)

("The claimant, however, retains the burden of proving her lack of residual

functional capacity."). The Commissioner has the burden of proof only on "the

fifth step, proving that there is work available in the economy that the claimant can

perform[.]" *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

Further, to determine whether a claimant is disabled, an ALJ must consider

all of a claimant's symptoms and the extent to which those symptoms "can

reasonably be accepted as consistent with the objective medical evidence and other

evidence." 20 C.F.R. § 404.1529(a), (c); SSR 16-3p, 2017 WL 5180304, at *2.

This involves a two-step process.  First, the ALJ "must consider whether there is

an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, at *3; see also 20 C.F.R. § 404.1529. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. . . ." SSR 16-3p, 2017 WL 5180304, at *3.

Here, Plaintiff focuses her appeal on two arguments:

1. Substantial evidence does not support the ALJ's finding that Plaintiff did not have a severe impairment or combination of impairments.

2. Substantial evidence does not support the ALJ's conclusion that Dr. Kala's opinions were not persuasive.[1]

The Court should agree with both arguments, find that the ALJ's decision is not supported by substantial evidence, **GRANT** Plaintiff's motion for summary judgment, **DENY** Defendant's motion for summary judgment and **REMAND** to the Commissioner for further administrative proceedings.

---

[1] In her motion, Plaintiff identifies her second issue as "Substantial evidence does not support the RFC determination because the ALJ improperly assessed the medical opinion evidence." (ECF No. 12, PagID.535.) However, the body of her argument is more accurately reflected as Defendant summarizes (ECF No.14, PageID.559), as Plaintiff is actually challenging the ALJ's determination that Dr. Kala's findings were not persuasive.

### 1. Whether substantial evidence supports the ALJ's finding that Plaintiff did not have a severe impairment

In the ALJ's September 6, 2022 decision, the ALJ first found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2026. (ECF No. 7-1, PageID.39.) The ALJ next found that Plaintiff had not engaged in substantial gainful activity since January 1, 2021, which is her alleged disability onset date. (*Id.*) The ALJ found that Plaintiff had medically determinable impairments of obesity, Huntington disease, depressive bipolar and related disorders, and anxiety and obsessive-compulsive disorders. (ECF No. 7-1, PageID.40.) However, the ALJ also found that Plaintiff did not have an impairment or combination of impairments that has significantly limited (*or is expected to significantly limit*) the ability to perform basic work-related activities for 12 consecutive months. (*Id.* (emphasis added)) Thus, the ALJ found that Plaintiff did not have a severe impairment or combination of impairments. (*Id.*) Thus, the ALJ determined at step two of the sequential evaluation that Plaintiff was not disabled. (*Id.*, PageID.47; ECF No. 12, PageID.528; ECF No. 14, PageID.549.)

Step 2 of the five-step sequential process requires an ALJ to determine if a claimant suffers from any severe impairments. 20 C.F.R. § 404.1520(a)(4)(ii), (c). An impairment is considered severe if it "significantly limits your physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). "An

impairment or combination of impairments is found 'not severe' and a finding of 'not disabled' is made at this step when medical evidence establishes only a *slight abnormality* or a combination of slight abnormalities which would have no more than a *minimal* effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered . . . ." SSR 85-28, 1985 WL 56856, at *3 (emphases added).  To be considered "severe" the impairment or combination of impairments must significantly limit the claimant's physical or mental ability to do "basic work activities."  20 C.F.R. § 404.1522(a). "Basic work activities" include such examples as (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting.  20 C.F.R. § 404.1522(b).

Here, the ALJ found that the record established obesity, Huntington disease, depressive bipolar and related disorders, and anxiety and obsessive-compulsive disorders, but that the record also supported a finding of "non-severity."  (ECF No. 7-1, PageID.41.)

As to obesity, the ALJ found that Plaintiff's Body Mass Index (BMI) was between 40-44.9, as she was 5'2" and weighed between 231-241 pounds, but that

8

her physical examination findings were frequently within normal limits, including cardiovascular and motor strength, sensory, and gait/station. (ECF No. 7-1, PageID.42.) The ALJ also found it significant that weight loss and additional exercise was recommended and encouraged, and that the record did not show any end organ damage, emergent care, or hospitalization regarding her obesity. (*Id.*) The ALJ noted, pursuant to Social Security Ruling 19-2p, that he considered the combined effects of obesity with each of the impairments. (*Id.*)

As to her Huntington disease,[2] the ALJ noted physical examinations occasionally exhibited gait/station wide-based gait and bilateral grip diminished to 4/5, but that her examinations are "frequently" within normal limits, including neurological (cranial nerves, sensory, reflexes, coordination, gait/station, extremities, motor for all extremities, and mental status). (ECF No. 7-1, PageID.42.) The ALJ found that the treatment records noted anxiety due to Plaintiff's chronic condition, fatigue, and depression, but no significant issues with migraines or insomnia. (*Id.*) The medical records further indicated that Plaintiff's Fluexetine/Prozac prescription *increased from 20 milligrams daily, to 40*

---

[2] For context, "Huntington's is a hereditary neurodegenerative disease that usually onsets in mid-life and gradually worsens in stages over time, ultimately resulting in confinement and the need for total care at home or in a hospital or nursing home. The disease is characterized by a movement disorder, dementia, and psychiatric disturbances, with additional characteristics, including personality changes." *McClenton v. Comm'r of Soc. Sec.*, No. 1:22-CV-456, 2023 WL 154823, at *4 (W.D. Mich. Jan. 11, 2023) (citing Johns Hopkins website).

*milligrams, then to 60 milligrams*, but that her "mood and affect [have] been stable with Prozac." (*Id.* (emphasis added))  The ALJ noted that her medical records did not indicate any end organ damage, emergent care, or hospitalization regarding her Huntington's disease, and that Plaintiff had not exhibited any choreiform movements (a symptom of Huntington's), or any tremors or twitching or her arms or legs (although her cheeks sometimes twitched, especially when watching TV. (*Id.)*

The ALJ found that the medical record shows diagnosis and treatment of depressive bipolar and related disorders and anxiety and obsessive-compulsive disorders.  (ECF No. 7-1, PageID.43.)  Although agreeing that Plaintiff had a history of ongoing treatment for depression and anxiety from her PCP and ongoing medication regimen management from her neurologist, the ALJ found that her mood and symptoms were controlled.  (*Id.*)  The ALJ relied on mental status examination findings that were "generally within normal limits," and that she presented as alert and oriented with normal behavior, memory, and speech, and appropriate judgment and mood and affect.  (*Id.*)  The ALJ cited progress notes that document that her mood was better and her symptoms well controlled (at the trebled level of) 60 milligrams of Fluoxetine, and that her insomnia was resolved. (*Id.*)

In Plaintiff's function report, she indicated that she has "no level of concentration," that she had a "hard time dealing with change," that she gets "stressed out easily" and has "really bad mood swings and depression," that her short term memory is depleting" and she cannot "deal with being around people for a long period of time," and that she has "a hard time completing tasks that are assigned to" her.  (ECF No. 7-1, PageID.234,240.)  She indicated that on a daily basis she gets up, watches TV, does "some light house cleaning," takes care of her six-year-old daughter, goes outside, cooks dinner, watches TV and goes to bed. (ECF No. 7-1, PageID.235.)  She further stated that her six-year-old daughter "pretty much does everything for herself," and that she takes care of a cat by cleaning the litter box.  (*Id.*)  She reported that she used to be able to work, but now has "bad anxiety," and that she is awake most of the night and tired all day. (*Id.*)  She stated she sometimes needed help to remember to take her medication, and the types of food she prepared depended on whether she had a "good day or a bad day."  (ECF No. 7-1, PageID.236.)  While she was able to go outside, and able to quickly shop each week for food and household items, Plaintiff also reported that she did not like going anywhere alone and had a hard time being around people she did not know.  (*Id.*)  She said she sometimes forgets her doctor's appointments, that she has no places she goes on a regular basis, and that while she used to love camping, she no longer had any interest. (*Id.*)  She also stated, "I used

to love going places and hanging out with friends and family.  We used to go on vacations often, concerts every summer. Now I have horrible anxiety and it makes me sick." ((ECF No. 7-1, PageID.238.)  She reported that she had "horrible anxiety, short term memory is getting really bad, horrible mood swings" and her "attention span is getting really short," where she could only pay attention for "maybe half an hour." (*Id.*)  She said she could follow spoken directions if they were short and simple, but that written directions were really hard for her, and she "always [has] to keep going back and rereading them." (*Id.*)  Plaintiff concluded her function report by saying, "Huntington disease has made my life absolutely horrible.  I watched my grandmother die from it and now I am watching my mother and aunts go through all the same stuff my grandmother went through and now my children and grandchildren will have to watch me go through it.  This is a genetic disorder with no cure or treatment that will eventually take my life." (ECF No. 7-1, PageID.241.)

The ALJ summarized Plaintiff's testimony as follows:

Concerning testimony, the claimant affirmed proceeding with the telephone hearing given the extraordinary circumstances of the COVID-19 Pandemic. Claimant lives in a two-story house with her husband, 7-year-old daughter, and 17-year-old stepson; her husband works; her height is 5'2" and weight 240 pounds; she has a driver's license; and had some college classes. She stopped working in April 2021; she stopped working for her previous employer because she needed to take a break as she was stressed and tired all the time but returned to work in November 2021, however, it was still too much, so she went to part-time working 3 days per week for a few months. Ultimately working part-time was still no better so she quit her job and has

12

not worked since. The stress at work caused panic attacks including having a hard time breathing, headaches, nausea and she would end up going home early. Additionally, she was tired all the time, sleeping a lot, and did not want to do anything. Issues that prevent her from working include anxiety, depression, fatigue, horrible mood swings, and difficulty concentrating. She sees a neurologist, Dr. Joanna Kala[3], approximately every 3-6 months, and takes medication daily, but still has depression with mood swings. Her medication dosage was increased and her side effects from those are not good. She has fogginess, forgetfulness, problems sleeping sometimes, and problems affecting her ability to stand/sit/walk and lift. She can sit for 15-20 minutes, stand for 15-20 minutes, walk a couple of blocks, lift and/or carry 10 pounds. Her most comfortable position on an average day is lying down[,] which she does for approximately 25% of the day. She is able to handle her personal hygiene and do household chores though she sits down/takes a break for approximately 10 minutes, before she can complete them.

(ECF No.7-1, PageID.41.)

The ALJ found both the function report and Plaintiff's testimony to be

inconsistent with the medical records, stating:

> After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent for the reasons explained in this decision.

> Although claimant has a history of obesity, the treatment record reveals no significant limitation results from this impairment. Likewise, the history of Huntington's disease, although a progressive disease, does not currently show that it significantly limits her physical and mental abilities. Finally, her mental health impairments also do not exhibit significant psychiatric and cognitive limitations, which is discussed above and below in more detail.

---

[3] As will be set forth below, the Court should find that the ALJ's decision to find Dr. Kala's opinions unpersuasive is not supported by substantial evidence.

13

(ECF No.7-1, PageID.43.)  The ALJ considered the relevant four functional areas and found only "mild" impairment in each area.  (ECF No. 7-1, PageID.43-45.) The ALJ concluded, "[b]ecause the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are non-severe (20 CFR 404.1520a(d)(1))."  (ECF No.7-1, PageID.45.)

Plaintiff argues that substantial evidence does not support the ALJ's finding that Plaintiff did not have a severe impairment or combination of impairments. The Court should agree.

While Plaintiff bears the burden of showing severity, "[i]n the Sixth Circuit, the severity determination is 'a *de minimis* hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)).  The inquiry at Step Two functions as an "administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint."  *Higgs*, 880 F.2d at 863 (quoting *Farris v. Sec'y of Health & Human Servs*., 773 F.2d 85, 90 n. 1 (6th Cir. 1985)). An impairment is not severe "only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id*. at 862.  The relevant question thus is "whether there is substantial evidence in the record

14

supporting the ALJ's finding that [Plaintiff] has only a 'slight' impairment that does not affect [her] ability to work." *Farris*, 773 F.2d at 90.

The Court should find that the ALJ's decision to treat Plaintiff's impairments as "totally groundless" is not supported by substantial evidence. The ALJ seemed to place great weight on the finding that Plaintiff's mental health symptoms seemed to be improving and that she was reacting well to repeatedly increased dosages of medication. (ECF No. 7-1, PageID.42-43.) He cites to medical records indicating that with increasing dosages of medication, her chronic depression was "much improved" or "well controlled." (*Id.*) "But just because an impairment improves, it does not mean that impairment is no longer severe." *Manners v. Comm'r of Soc. Sec.*, No. 13-14703, 2015 WL 12672128, at *7 (E.D. Mich. Mar. 31, 2015) (Cleland, J.) (citing *Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 Fed. App'x 488, 493-94 (6th Cir. 2011)). Indeed, "[w]hether or not beneficial treatments render an impairment not severe depends on the impairment's initial degree of severity and the amount of improvement offered by the treatment." *Id.* In this case, while each time Plaintiff's medication dosage was increased, she seemed to improve, her symptoms nonetheless required higher and higher levels of medication. The Court should find that the ALJ erred by placing too great of a weight on Plaintiff's apparent improved symptoms in the overall context of her medical records, which show more than a *de minimis* severity of impairment, and

15

fluctuating degrees and complaints of depression, fatigue, and anxiety.  *See Boulis-Gasche*, 451 Fed. App'x at 494  (finding that ALJ erred by "concluding that some unspecified improvement in Plaintiff's mood cured any anxiety or depression that Plaintiff was experiencing" and that the "ALJ's conclusion appears to be grounded in a myopic reading of the record combined with a flawed view of mental illness.").  This is particularly true where even Plaintiff suggests she has good days and bad days.  (ECF No. 7-1, PageID.236.)

Moreover, the Court should also be persuaded by Plaintiff's argument that the ALJ's non-severe determination placed too much emphasis on the fact that her Huntington's disease had not manifested in choreiform movements, suggesting that the movements are the primary factor in determining severity of her Huntington's condition.  As Plaintiff states:

> The ALJ also appeared to minimize the effects of [Plaintiff's]Huntington's disease on the ground that she was "currently not experiencing any bothersome choreiform movements." ECF No. 7-1, PageID.42. However, the fact that [Plaintiff] had not yet developed this clinical sign did not undermine her allegations regarding the severity, persistence, and limiting effect of her current symptoms, which included fatigue, insomnia, depression, anxiety, and brain fog. The ALJ improperly determined that Ms. [Plaintiff's] Huntington disease was nonsevere, and her claims were "totally groundless," simply because she had yet to develop involuntary movements.

(ECF No. 12, PageID.533.)  While diagnosis alone does not establish severity.

*Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988), Plaintiff here does not rest simply on her diagnosis of Huntington's disease, but also her allegations and

documented constellation of symptoms, including fatigue, depression, anxiety, and difficulty concentrating.

A fair review of the record cannot support the ALJ's finding. Plaintiff's documented, co-existing conditions of obesity, Huntington disease, depressive bipolar and related disorders, and anxiety and obsessive-compulsive disorders, do not constitute only "a slight abnormality that minimally affects work ability." *Higgs*, 880F.2d at 863. Substantial evidence does not support the ALJ's findings at Step 2. The evidence demonstrates that Plaintiff's impairments are "sufficiently severe to satisfy the '*de minimis* hurdle' posed at step two of the sequential analysis, and the Court does not view this case as one presenting a 'totally groundless' claim from a medical standpoint." *Hooper v. Comm'r of Soc. Sec.*, No. CV 16-11723, 2017 WL 726663, at *6 (E.D. Mich. Jan. 25, 2017) (Grand, M.J.), *report and recommendation adopted*, No. 16-11723, 2017 WL 713032 (E.D. Mich. Feb. 23, 2017) (O'Meara, J.) (quoting *Higgs*, 880 F.2d at 862-63).

Sixth Circuit precedent readily establishes that failure to find an impairment severe at Step 2 of the sequential analysis is not reversible error if the ALJ found another impairment severe and thus continued with the five-step evaluation. *See, e.g., Fink v. Astrue*, 253 F. App'x 580, 583-84 (6th Cir. 2007); *Anthony*, 266 F. App'x at 457. Thus, "any alleged omission from the list of severe impairments does not undermine the ALJ's decision" so long as the ALJ considers Plaintiff's

"severe and nonsevere impairments in the remaining steps of the sequential analysis." *Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F.Supp.2d 792, 822-23 (E.D. Mich. 2013) (quotation marks and citation omitted). "The fact that some of [the plaintiff's] impairments were not deemed to be severe at step two [may be] legally irrelevant." *Anthony*, 266 F. App'x at 457. In this case, however, the ALJ ended his analysis at step 2 and did not continue. Thus, the ALJ's error cannot be deemed harmless – as it deprived Plaintiff of the ALJ's analysis under any of the remaining steps – and the Court should remand for further proceedings.

### 2. Whether substantial evidence supports the ALJ's conclusion that Dr. Kala's opinions were not persuasive.

Plaintiff next argues that substantial evidence does not support the ALJ's conclusion that Dr. Kala's opinions were not persuasive.

The medical opinion evidence Plaintiff submitted was evaluated by the ALJ under 20 C.F.R. § 416.920c because Plaintiff filed his application after March 17, 2017.

This relatively new rule replaces the former treating physician rule, see 20 C.F.R. § 416.927 (March 27, 2017), which gave substantial deference to treating medical source opinions. *See Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 905 (E.D. Mich. 2021). Under the newer rule, no one medical opinion is given controlling weight. 20 C.F.R. § 416.920c. Instead, each opinion must be evaluated for supportability and consistency with the record; the medical source's

relationship with the patient; and any specialized training or experience the medical source possesses. *Id*. Further, the agency may look at the medical source's familiarity with other evidence in the record and familiarity with agency policies and evidentiary requirements. The most important factors are supportability and consistency with the record. *Id*. (only requiring the ALJ to discuss these factors in a decision; the others are optional).

With respect to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). As for consistency, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

Here, the Court should find that the ALJ's finding that Dr. Kala's opinions were not persuasive was not supported by substantial evidence, in that the ALJ did not adequately explain his consideration of the supportability and consistency factors, painted too broad a brush in terms of Plaintiff's trend toward improvement

and medical records, and appeared, arbitrarily, to place more weight on the
opinions of the state agency medical consultants, neither of whom specialized in
neurology or personally examined Plaintiff.

With respect to the state agency non-examining medical consultants'
(psychology and pulmonary) initial opinions, the ALJ made the conclusory and
identical statement in each case that their opinion was "supported by explanation
and [was] consistent with the record overall; and is therefore persuasive.
Specifically, the treatment records frequently reveal unremarkable objective
evidence and clinical findings within normal limits." (ECF No. 7-1, PageID.45)
Similarly, the ALJ noted that the reconsideration opinions of the state agency non-
examining medical consultants (psychology and osteopathy) were "supported by
explanation and [were] consistent with the record overall; and [are] therefore
persuasive. Specifically, the treatment records frequently reveal unremarkable
objective evidence and clinical findings within normal limits." (ECF No. 7-1,
PageID.46-45.) "[T]he Sixth Circuit requires that courts eliminate conclusory
statements when assessing ALJ opinions." *Gabriel v. Comm'r of Soc. Sec.*, No.
21-10529, 2022 WL 1482013, at *5 (E.D. Mich. Feb. 1, 2022) (Grey, M.J.), *report
and recommendation adopted sub nom. Gabriel v. Comm'r of Soc. Sec. Admin.*,
No. 21-10529, 2022 WL 1481847 (E.D. Mich. May 9, 2022) (Roberts, J.) (citing
*Smalley v. Comm'r of Soc. Sec.,* No. 20-1865, 2021 WL 4026783, at *3 (6th Cir.

20

Sept. 3, 2021) (internal citations omitted)).  The Court should find the ALJ's

identical, broad statements, which were applied to all of the state agency non-

examining medical consultants, are too conclusory to support the ALJ's

supportabilty and consistency analysis as to these opinions.

Likewise, the ALJ's rejection of Dr. Kala's October 8, 2021 "Medical

Source Statement" is also not supported by substantial evidence when the ALJ

detailed the statement and then stated in broadbrush fashion, "I find this opinion is

not well supported and is inconsistent with the record overall; and is therefore not

persuasive.  Specifically, as discussed above, it is internally inconsistent, as well as

this provider's own treatment records frequently reveal unremarkable objective

evidence and clinical findings (e.g., 1F/10-11, 17-18; 4D/10; 9F/5); and

accordingly, do not support this opinion."  (ECF No. 7-1, PageID.46.)   The

referenced internal citations simply point to "the neurologist's own treatment

record including objective evidence and clinical findings are frequently within

normal limits or mild," without detailing how those findings are specifically

inconsistent with Dr. Kala's statement.  (*Id.*)

It appears to the Undersigned that the crux of the ALJ's opinion is that

Plaintiff's symptoms were improving, particularly as controlled with medication,

and that Dr. Kala's opinions were inconsistent with her improvement.  However,

when taken as a whole, the medical records, as Plaintiff suggests, "reflect that her

symptoms *waxed and waned*, temporarily improving after medication adjustments and then gradually returning and intensifying." (ECF No. 12, PageID.538 (emphasis added).) And, moreover, Plaintiff's "periods of improvement or stability in her condition were not inconsistent with Dr. Kala's opinions that [Plaintiff's] symptoms, in particular her fatigue, would limit her ability to maintain attendance and stay on task." (*Id.*) Plaintiff's medical records exhibit increasing levels of medication required to control her symptoms, and demonstrate that her symptoms of fatigue and anxiety waxed and waned. The Court should agree that this case is similar to *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 323 (6th Cir. 2015), in which the Sixth Circuit found that the ALJ impermissibly discounted a physician's opinion, stating, "given the documented episodic nature of [the plaintiff's] mental ailments, it is unsurprising that she reported some better days and some worse days. It is notable that even during her 'better' days, [the plaintiff's] treatment notes continued to classify her as presenting as depressed, anxious, and agitated." *Id.* (finding error when the ALJ focused "exclusively on instances in which [the plaintiff] appeared to be doing relatively well"). Plaintiff's improved symptoms, on increasing and multiple adjustment levels of medication, do not render Dr. Kala's opinions unpersuasive, much less support a finding that she suffered from no severe impairments under the applicable and low bar discussed above. *See Vorhis-Deaton v. Comm'r of Soc. Sec.*, 34 F. Supp. 3d 809,

22

819 (S.D. Ohio 2014) ("[E]vidence of improved mental health symptoms does not render Dr. Boerger's opinion inconsistent with the medical evidence. The evidence shows that Plaintiff's symptoms often improved, but that such improvement was often short-lived and that her medications were frequently changed and adjusted.").

Accordingly, the Court should find the ALJ's treatment of Dr. Kala's opinions is not supported by substantial evidence.

### E.    Conclusion

Although Plaintiff's impairments might ultimately be deemed non-disabling, that determination can only properly be made after a more complete application of the five-step sequential analysis.  The record in this case suggests that Plaintiff is not presenting a "totally groundless" claim from a medical standpoint, *Higgs*, 880 F.2d at 863, and accordingly, remand is warranted.

Accordingly, for the foregoing reasons, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary judgment (ECF No. 12), **DENY** Defendant's motion for summary judgment (ECF No. 14), and **REMAND** the case to the Commissioner for further proceedings consisted with this report.

The Court further ORDERS expedited briefing on any objections.  **Any objections must be filed on or before September 9, 2024, and a response to the objections must be filed on or before September 19, 2024.**

23

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, and failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6ᵗʰ Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6ᵗʰ Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge. **The Court finds good cause to order expedited briefing on any objections. As such, any objections must be filed on or before September 9, 2024, and a response to the objections must be filed on or before September 19, 2024.**

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must precisely recite the provision of this Report and Recommendation to which it pertains. The opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to

Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  August 29, 2024                    s/*Anthony P. Patti*
                                           Anthony P. Patti
                                           UNITED STATES MAGISTRATE JUDGE